**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe,<br>Plaintiff,<br>v.<br>GoDaddy.com LLC,<br>Defendant. | No. CV-25-02794-PHX-JJT<br>**ORDER** |

At issue is Defendant GoDaddy.com LLC's Partial Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17, MTD), to which Plaintiff Jane Doe[1] filed a Response (Doc. 18, Resp.) and Defendant filed a Reply (Doc. 19, Reply). The Court finds it appropriate to resolve the Motion without oral argument. *See* LRCiv 7.2(f).

## I. BACKGROUND

In the First Amended Complaint (Doc. 16, FAC), the operative pleading, Plaintiff alleges the following facts. Plaintiff began working remotely for Defendant in October 2018 as a Hosting Sales and Support Representative. At the onset of the COVID-19 pandemic in 2020, although she was already working remotely, she alleges that "abruptly mov[ing] to a work-from-home status . . . triggered anxiety, panic attacks, and a relapse of bulimia nervosa and PTSD trauma-related symptoms." (FAC ¶ 15.) As a result, she requested and Defendant granted multiple intermittent and continuous leaves of absence, including leave under the Family Medical Leave Act (FMLA) in 2020 (FAC ¶ 17),

[1] In a prior Order (Doc. 6), the Court granted Plaintiff's request to proceed anonymously at this stage of the litigation, indicated here by the pseudonym "Jane Doe."

intermittent leave of four days per month as an accommodation under the Americans with Disabilities Act (ADA) from November 1, 2021 to May 1, 2022 (FAC ¶¶ 19–20), continuous leave from September 2022 to May 2023 (FAC ¶¶ 83, 104), and continuous leave from September 2023, when she was admitted to an inpatient rehabilitation facility, to January 2024, when Defendant terminated her employment (FAC ¶¶ 142, 150). Defendant's basis for termination was a violation of its attendance policy by way of Plaintiff's unexcused absence from August 28, 2023 to September 17, 2023—a period in which Plaintiff alleges "she had to wait to get into a mental health rehabilitation program," about which she alleges she gave Human Resources (HR) some documentation. (FAC ¶¶ 149–50.) Plaintiff also asked for medical accommodations while at work, "including a move to first shift and a stand-up desk for her home office." (FAC ¶ 22.) During this time, Plaintiff alleges Defendant handled her leave requests poorly, including inadvertently sending her a termination letter in February 2022 that was later rescinded and being told the intermittent leave accommodation was canceled due to the accommodation of the change to work on the first shift. (FAC ¶¶ 25, 28, 39.)

Beginning around March or April 2022, Plaintiff became friends with another employee of Defendant, Tyshaun Pierre, who had the role of Department Care Lead. (FAC ¶¶ 44, 46.) Mr. Pierre "began incorporating sexual dialogue into Slack messages [to Plaintiff] at work" and, on August 22, 2022, "he repeatedly pressured her to allow him to visit Plaintiff at her apartment," which she did. (FAC ¶¶ 51, 74.) "While there, he roofied Plaintiff and sexually assaulted her without protection." (FAC ¶ 76.) Plaintiff "initially did not report the assault," but five to seven months later she "made a police report against [Mr.] Pierre in January 2023" and reported the alleged "sexual harassment and assault to Defendant's HR" in March 2023. (FAC ¶¶ 78, 97, 99.) Defendant hired an investigator to review Plaintiff's sexual harassment and assault allegations, and after reading the communications between Plaintiff and Mr. Pierre, the investigator concluded that "it was merely a case of two co-workers dating" and eventually closed the investigation. (FAC

¶¶ 100, 112, 120.) About four months after Plaintiff reported the alleged assault to Defendant, Mr. Pierre "died unexpectedly on July 25, 2023." (FAC ¶ 131.)

Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC) on June 4, 2023, later amended on July 3, 2024. (FAC ¶ 170.) The EEOC issued a Notice of Right to Sue on June 11, 2025. (FAC ¶ 170.)

In this lawsuit, Plaintiff, who is Hispanic (FAC ¶ 2), brings 13 claims in a kitchen sink approach against Defendant, as follows: (1) FMLA interference; (2) FMLA retaliation; (3) ADA disability discrimination; (4) ADA retaliation; (5) race discrimination under Title VII; (6) race discrimination under 42 U.S.C. § 1981; (7) hostile work environment under Title VII; (8) retaliation under Title VII; (9) intentional infliction of emotional distress; (10) negligent infliction of emotional distress; (11) negligent supervision and retention; (12) paid sick time retaliation under Arizona law; and (13) wrongful termination in violation of public policy. Plaintiff bases these claims on myriad alternative reasons for her termination. Specifically, she alleges she was terminated because she took FMLA leave (FAC ¶ 185), because of her disability under the ADA (FAC ¶ 199), because she requested disability accommodation under the ADA (FAC ¶ 185), because she is Hispanic (FAC ¶¶ 205, 214), because she reported sexual harassment (FAC ¶ 227), because she used paid sick time under Arizona law (FAC ¶ 248), and/or because she reported violations of Arizona criminal statutes prohibiting sexual assault, assault, stalking, and harassment (FAC ¶ 254). Defendant now moves to dismiss Counts 5, 6, 9, 10, and 11 pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for

failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Title VII and Section 1981 Discrimination Claims

Defendant first contends that Plaintiff, who is Hispanic, has not stated claims for discrimination under Title VII or § 1981 in Counts 5 and 6 because the sole factual basis for the claims as alleged in the FAC is the use of comparators—"white" employees who were allegedly treated more favorably—and Plaintiff has not sufficiently alleged that the comparators were similarly situated. (MTD at 6–10.) To begin with, "Hispanic" is not a race, as alleged by Plaintiff in the FAC; rather, it is an ethnicity or indicator of national origin. *See, e.g.*, *United States v. Montero-Camargo*, 208 F.3d 1122, 1133 n.19 (9th Cir.

2000) (noting the "U.S. Census Bureau treats race and ethnicity differently—as a result, under this system everyone is classified as both a member of one of the four race groups (white, black, American Indian and Alaska Native, or Asian & Pacific Islander) and also as either Hispanic or non-Hispanic").

Title VII provides it is prohibited for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). A Hispanic person is part of a protected class in the form of national origin pursuant to the plain language of Title VII. For its part, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Under Ninth Circuit precedent, "[a]lthough national origin discrimination is not within the ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 372 F.3d 840, 850 (9th Cir. 2004) (citing *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (applying § 1981 to protect Chinese ethnic group)). Under this precedent, the immigrant Hispanic ethnicity is part of a protected class under § 1981.

By alleging she is Hispanic, Plaintiff has plausibly alleged she is part of a protected class under either statute. To prevail on her Title VII claim, Plaintiff must prove Defendant intentionally discriminated against her *because of* her protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (emphasis added); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). And to prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, *but for* race [or immigrant ethnicity], [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020) (emphasis added).

. . .

In the FAC, Plaintiff does not allege any facts implying direct evidence that Defendant took any action because Plaintiff is Hispanic; instead, she alleges only disparate treatment as the basis for her discrimination claims. (FAC ¶¶ 206, 214.) The problem arises with the comparators she mentions (but does not identify) in alleging disparate treatment, who she alleges are "white." Of course, any similarly situated comparator who a plaintiff alleges was treated more favorably must be from a different class, be it ethnicity or race. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). ("A person suffers disparate treatment in his [or her] employment "when he or she is singled out and treated less favorably than others similarly situated" who are outside the person's protected class.) Here, it is entirely possible that Plaintiff is Hispanic and also white, such that attempting to compare herself to another white employee is meaningless in terms of her claims of discrimination. Likewise, while Plaintiff alleges the comparators are white, they may also be Hispanic; Plaintiff makes no mention of the unnamed comparators' ethnicity. As a result, the comparators as alleged do not form a foundation for Plaintiff's discrimination claims.

That aside, as Defendant points out, when relying on a similarly situated framework as Plaintiff attempts to do here, the allegations must lead to the plausible inference that she and the comparators are similarly situated "in all material respects." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1016 (9th Cir. 2018); *Moran v. Selig*, 447 F.3d 748, 754 (9th Cir. 2006). In *Bastidas v. Good Samaritan Hospital LP*, 774 F. App'x 361, 363–64 (9th Cir. 2019), the Ninth Circuit affirmed a district court's dismissal of disparate treatment claims where the plaintiff failed to sufficiently allege that the plaintiff and comparators had similar jobs under the same supervision, the comparators engaged in similar conduct to the plaintiff, or the egregiousness of the comparators' alleged offenses was comparable to those of the plaintiff.

Plaintiff's allegations are also deficient in this regard. As comparators, Plaintiff identifies a "white male" and the "first white female" and "second white female." (FAC ¶¶ 153–56.) The "white male was in a sales role just like Plaintiff before moving to a more

technical role" and took "intermittent leave for years across all his roles." (FAC ¶ 154.) But it is not clear that Plaintiff and "white male" were under the same supervision when relevant decisions were made, and according to the allegations, Plaintiff took far more than intermittent leave; she took continuous leave for approximate periods of eight months and five months over a period of just over two years, all with Defendant's permission. (FAC ¶¶ 83, 104, 142, 150.) Moreover, Defendant terminated her employment for allegedly failing to seek permission for continuous leave, not intermittent leave, in August and September 2023 (FAC ¶¶ 149–52), and no allegations in the FAC lead to the plausible inference that "white male" was similarly situated in this respect either. For these reasons, "white male" is not similarly situated in all material respects to Plaintiff to support her discrimination claims.

As for "first white female," she was "under the same supervisor at the time Plaintiff was terminated," had "greater absenteeism during the same general time period" and "was not terminated the way Plaintiff was." (FAC ¶¶ 153, 155.) Again, the Court cannot infer they were similarly situated in all material respects, as it is unclear what the role or work responsibilities of "first white female" were. Moreover, Plaintiff took approved leave over the course of years and was terminated for an unapproved absence from work; the FAC contains no allegations that, for example, "first white female" received the kinds of continuous periods off work Plaintiff did or that Defendant addressed what it found to be unapproved continuous absenteeism on the part of "first white female," as Defendant did with Plaintiff.

And the alleged facts regarding "second white female" are not close to showing she was similarly situated in all material respects to Plaintiff. While both women were allegedly sexually harassed by a coworker, the FAC contains no allegations regarding what the role of "second white female" was or that the two women were under the same decision-making authority within Defendant; that the circumstances of the alleged sexual harassment were similar; that Defendant assigned an investigator to "second white female," as it did for Plaintiff's claims, who found differently in the two cases; how "second white

female" was "supported" and Plaintiff was not; or whether, as in Plaintiff's case, the alleged harasser was no longer working at the company within months of the eventual report of the harassment to Defendant. In short, simply because two women employees of Defendant allege they were sexually harassed does not lead to the inference that they were similarly situated in all material respects.

For all these reasons, the Court will grant Defendant's request to dismiss Plaintiffs' discrimination claims in Counts 5 and 6 of the FAC. Because Plaintiff may be able to cure the defects in these claims by amendment, the Court will permit Plaintiff to amend these two claims in the FAC. *Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000).

**B. Tort Claims**

Defendant next argues that Plaintiff's tort claims as raised in Counts 9, 10, and 11 of the FAC are precluded by the Arizona workers' compensation regime. (MTD at 10–15.) In relevant part, the Arizona workers' compensation statute provides:

> A. The right to recover compensation pursuant to this chapter for injuries sustained by an employee . . . is the exclusive remedy against the employer or any co-employee acting in the scope of his employment . . . except that if the injury is caused by the employer's wilful misconduct . . . and the act indicates a wilful disregard of the life, limb or bodily safety of employees, the injured employee may either claim compensation or maintain an action at law for damages against the . . . entity alleged to have engaged in the wilful misconduct.
>
> B. "Wilful misconduct" as used in this section means an act done knowingly and purposely with the direct object of injuring another.

A.R.S. § 23-1022(A)–(B).

In the FAC, Plaintiff alleges Defendant is tortiously liable based on conduct "including the sexual assault, the handling of the report of the sexual assault, the 'investigation' by a non-independent lawyer, the refusal to notify Plaintiff of the outcome as promised, or even shield Plaintiff from contact from the individual who assaulted her at work." (FAC ¶ 232.) To begin with, the allegations do not support an inference that Defendant is liable for the alleged sexual assault of Plaintiff itself. While Plaintiff alleges Mr. Pierre was also Defendant's employee, no allegations lead to the inference that

Mr. Pierre's acts were in the course and scope of his employment, such that Defendant could be vicariously liable for his acts. *See John BM Doe v. The Roman Catholic Church of the Diocese of Phoenix*, 533 P.3d 214, 222 (Ariz. Ct. App. 2023). And no allegations lead to the inference that Defendant had "notice of [Mr. Pierre's] sexual propensities," such that Defendant could be directly liable for his acts. *Id.* at 219–20. Plaintiff only alleges that, upon her own investigation, she discovered that Mr. Pierre allegedly had a criminal record, including charges or convictions of theft, burglary, loitering and prowling (FAC ¶ 95), which do not reveal that he would commit sexual assault on a fellow employee even if Defendant conducted its own background check and had notice of Mr. Pierre's alleged record.

As for Plaintiff's allegations that Defendant's investigation and actions were insufficient after she finally reported sexual harassment, Plaintiff can only proceed on such a claim in tort if Defendant engaged in willful misconduct—that is, "knowingly and purposely with the direct object of injuring" Plaintiff under A.R.S. § 23-1022(A)–(B). For this showing, Plaintiff refers the Court to *Ford v. Revlon*, 734 P.2d 580 (Ariz. 1987), in which the Arizona Supreme Court found that the plaintiff could bring tort claims for injuries resulting from sexual harassment by a coworker because she had been the victim of sexual harassment for years and she complained repeatedly to company officials over that period of time, to no effect. *Id.* at 585–86. The court determined the company's tortious acts "were not covered by workers' compensation because they had been committed over a long period of time and the injury sustained was not unexpected." *Irvin Investors, Inc. v. Superior Ct. in and for Maricopa Cnty.*, 800 P.2d 979, 981 (Ariz. Ct. App. 1990) (analyzing *Ford*, 734 P.2d at 586).

Plaintiff's allegations are a far cry from those of the plaintiff in *Ford*. Plaintiff does not allege she reported the alleged sexual harassment to Defendant while it was occurring or even after Mr. Pierre allegedly sexually assaulted her. Defendant thus had no notice upon which any finding of willful misconduct on its part could be based. Ultimately, Plaintiff alleges she reported the sexual assault and harassment to Defendant approximately

seven months after it occurred. (FAC ¶ 99.) Defendant investigated, finding there had been "inappropriate language" in the messages between Plaintiff and Mr. Pierre (FAC ¶ 124), and Plaintiff does not allege that she was even in contact with Mr. Pierre at the time of the report to Defendant or until his death four months later. As the Arizona Court of Appeals concluded in *Irvin Investors*, the alleged facts of this case, "even when every inference is indulged in favor of the plaintiff, simply do not add up to intentional conduct, or even a reckless disregard that emotional distress would ensue." 800 P.2d at 982. As in that case, according to the allegations here, Defendant was not even aware of Mr. Pierre's alleged conduct toward Plaintiff while it was occurring or for months afterwards, and Defendant initiated an investigation when Plaintiff ultimately made her claims to Defendant. *See id.* The allegations in the FAC do not raise the inference Defendant acted "knowingly and purposely with the direct object of injuring" Plaintiff under A.R.S. § 23-1022(A)–(B), and thus any claims Plaintiff has for injury she alleges she suffered fall exclusively within the coverage of the worker's compensation statute. *See id.*

This conclusion applies with equal force to Plaintiff's claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision and retention, the latter two of which are not even premised on intentional or knowing and purposeful conduct as required to escape the exclusive remedy of the workers' compensation statute. *See id.* at 980. For these reasons, the Court will dismiss Counts 9, 10, and 11, and because Plaintiff cannot cure the defects in these claims by amendment, they are dismissed with prejudice.[2] *Lopez*, 203 F.3d at 1127–30.

**IT IS THEREFORE ORDERED** granting Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17). Counts 5 and 6 of the First Amended Complaint (Doc. 16) are dismissed with leave to amend. Counts 9, 10, and 11 are dismissed with prejudice.

**IT IS FURTHER ORDERED** that, by **October 7, 2026**, Plaintiff may file a Second Amended Complaint if she can cure the defects in Counts 5 and 6 identified in this

[2] Because dismissal is appropriate on the grounds discussed, the Court need not examine Defendant's other arguments for dismissal of these claims.

Order. If Plaintiff fails to timely file a Second Amended Complaint, this lawsuit will proceed on the First Amended Complaint without Counts 5, 6, 9, 10, and 11, and Defendant shall answer the remainder of the First Amended Complaint (Doc. 16) by **October 21, 2026**.

Dated this 22nd day of September, 2026.

Honorable John J. Tuchi
United States District Judge